# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) CRIM. ACTION 13-0084-WS |
| | ) |
| JANICE FORD GREEN, | ) |
| | ) |
| Defendant. | ) |

## ORDER

The defendant has filed a motion to fix trial in the Northern Division, (Doc. 30), to which the government has filed a response. (Doc. 51). At the Court's request, the United States Marshals Service undertook a thorough review of security issues at the Selma courthouse and, at a hearing conducted August 13, 2013, presented its findings through four witnesses. The parties examined the witnesses and announced they had nothing further to offer.[1] The defendant's motion is now ripe for resolution.

"The court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18. The parties agree that Rule 18 governs the analysis of the defendant's motion.[2]

The defendant, focusing on convenience, notes that she and her potential witnesses reside in Perry County, which is 125 to 150 miles closer to Selma than to Mobile. (Doc. 30 at 4-5). The defendant is incarcerated, so her convenience is

---

[1] The defendant's post-hearing motion to supplement the record, (Doc. 91), although untimely, has been granted by separate order.

[2] Although the defendant's motion nominally invokes the Fifth and Sixth Amendments, (Doc. 30 at 1), she concedes that she "may constitutionally be tried in any division of the Southern District." (*Id*. at 5-6). The defendant is correct. *United States v. Betancourt*, 734 F.2d 750, 756 (11th Cir. 1984) ("[T]here is no constitutional right to trial within a division.").

of minimal significance, if any.[3]  The convenience of the defendant's witnesses
may matter, to the extent they are not incarcerated, but she has provided no
indication how many of them there might be, and the Court is unprepared to
assume it is a significant number.

The defendant also suspects that the "large majority" of the government's
witnesses are law enforcement agents residing in Montgomery, which is over 100
miles closer to Selma than to Mobile.  (Doc. 30 at 4-5).  The government does not
address this contention.  Because Rule 18 requires the Court to consider the
convenience of the victims, and because the superseding indictment identifies five
law enforcement officers as victims, the Court assumes for present purposes that,
overall, the convenience of the defendant, victims and witnesses favors trial in
Selma.

The government focuses on the prompt administration of justice factor.
"[M]atters of security clearly fall within that consideration."  *United States v.
Merrill*, 513 F.3d 1293, 1304 (11th Cir. 2008) (internal quotes omitted).  Both the
defendant and her co-defendant are in custody.  The co-defendant has recently
announced her intention to plead guilty, (Doc. 90), but all parties agree she will be
an important government witness at the defendant's trial.  (Docs. 52, 64).  "[I]t is
well documented that the U.S. Marshal's Office has articulated manpower and
safety concerns attendant to conducting criminal trials in the Northern Division,
particularly where there are multiple in-custody defendants and/or witnesses."
*United States v. Mason*, 2009 WL 1077711 at *2 (S.D. Ala. 2009) (citing *United
States v. Williams*, 2008 WL 2225763 at *1 (S.D. Ala. 2008)).  The information

---

[3] *See United States v. James*, 528 F.2d 999, 1021-22 (5th Cir. 1976) (where four of
the defendants were incarcerated, "it is difficult to understand how the appellants can
claim that the case should have been tried in [the] Jackson [division]."); *United States v.
Lipscomb*, 299 F.3d 303, 341 (5th Cir. 2002) (explaining that, in *James*, "convenience did
not militate against transfer because … four of the witnesses were in jail …."); *see also
United States v. Wieland*, 2009 WL 88101 at *1 (D.N.D. 2009) ("[S]ince Defendant will
remain incarcerated no matter where he is held, the convenience of the Defendant is not a
particularly compelling factor in this case.").

provided at the recent hearing confirms that these concerns still exist and are well justified.[4]

Such concerns are only exacerbated in this case. The defendant's mother was convicted in 2011 on state charges of solicitation to commit murder. (Doc. 72, Exhibit 4). While incarcerated incident to that conviction, she was again charged with solicitation to commit murder, arising out of efforts to arrange the murder of the state judge who presided over her 2011 trial and of a state law enforcement officer associated with that prosecution. (Doc. 51 at 1 n.1). On June 17, 2013, the defendant's mother pleaded guilty in state court to a lesser offense of solicitation to commit first-degree assault and was sentenced to 22½ years imprisonment. (Doc. 72, Exhibit 3). At yesterday's hearing, a deputy marshal reported that, according to information he received from a law enforcement officer on the scene, approximately 60 family members crowded the courtroom for the plea and sentencing and, as the deputies escorted the defendant's mother out, an undetermined but large number of these individuals pressed in on them. After a brief struggle, the deputies were able to remove the defendant's mother to a more secure area, but they arrested one person who refused to relinquish his grip on the defendant's mother. When the deputies escorted the defendant's mother outside the courthouse, fifteen to twenty interested persons were milling around, and a number of unknown vehicles were in the immediate vicinity. Although no further incident occurred, the six deputies were heavily outnumbered and understandably concerned for their safety and that of the defendant's mother.

---

[4] The defendant cites a 2011 order from Judge DuBose for the proposition that "significant improvements and repairs have … been made to the Selma courthouse" since 2008. (Doc. 91). She notes that the same witness who so testified before Judge DuBose two years ago was one of the witnesses at yesterday's hearing. And so he was, but he spoke only to the logistical issues (concerning manpower and housing a female defendant) that are implicated by the many security issues detailed by a different witness – the deputy marshal who recently conducted the first thorough risk assessment of the Selma courthouse in many years. The Court yesterday was presented a much more complete picture of the security situation in Selma than was presented to Judge DuBose or to other judges in recent years. There is thus no relevant inconsistency.

The defendant, through counsel, reported that the lawyer for the defendant's mother has told her the crowd had only been trying to hug the defendant's mother, and she questioned how bad the incident could have been given that only one arrest was made. But this misses the point. A passionate crowd of over 60 persons created a concrete and serious security breach despite the presence of ample law enforcement agents, in and around a state courthouse with many of the same structural and operational security issues as the federal courthouse across the street. There is no reason to believe this large extended family would not behave similarly, or with similar unpredictability, at the defendant's trial (indeed, the defendant has made no suggestion it would not), and the officials charged with security are unable to ensure the safety of the defendant, the witnesses, the venire, the jury and the judicial staff under such circumstances in a courthouse as deficient as that in Selma.

"[T]he prompt administration of justice … includes the state of the court's docket generally. The court … must weigh the impact the trial location will have on the timely disposition of the instant case and other cases." *Merrill*, 513 F.3d at 1304 (internal quotes omitted). The witnesses at the August 13 hearing confirmed that the absence of many security features at the Selma courthouse and the presence of multiple areas of security concern would require a large contingent of deputy marshals and court security officers, to the extent that the resulting shortage of such personnel in Mobile would require the restriction of court proceedings in this courthouse. To counter the heightened security threat of the defendant's extended family, even more personnel would need to be deployed, effectively shutting down the Mobile courthouse to the public. This trial is expected to last 3½ days, so that court proceedings in Mobile would be curtailed or shut down for at least four full days. This as well weighs against holding trial in Selma.

"A district court has discretion to fix the place of a trial in any division within the district, and we review the district court's decision only for abuse of

discretion." *Merrill*, 513 F.3d at 1304. The factors addressed above fully support the conclusion that trial should not be held in Selma, and the Court will deny the defendant's motion on that basis. However, although it does not enter into the Court's decision, the nature of the charges in this and related criminal proceedings is not irrelevant. The defendant's mother has been convicted of soliciting the murder of an unknown individual, and she has recently been convicted of soliciting an assault in the first degree of a judicial officer and law enforcement agent involved in her first conviction.[5] The charges in this case arise from the defendant's firing of a rifle at five law enforcement officers executing a search warrant at her residence, and the state charges to which the search related are for conspiracy to murder the same judge and investigator targeted by the defendant's mother. (Doc. 51 at 1-2 & 1 n.1). Although the defendant and the other two named conspirators are in custody, (*id*.), the Court has received no assurances that all related persons willing to solicit or commit the murder or injury of judicial and law enforcement personnel have been similarly incapacitated.

The defendant suggests that the Eleventh Circuit requires a court considering a Rule 18 motion to assess the relative "jury diversity" of the two divisions. (Doc. 30 at 5). The Northern Division, she continues, has a significantly higher percentage of African-American citizens than the Southern Division, and "there are significant differences in the education, occupation, income and other socio-economic factors between the two populations." (*Id*.). While the *Merrill* Court noted the trial court's assessment of relative jury diversity, it did not endorse this as a factor under Rule 18 or consider it in any fashion. 513 F.3d at 1304. Nor, given the language of Rule 18, could it easily have done so.

---

[5] As applicable in her case, first-degree assault requires an intent to cause serious physical injury, to disfigure seriously and permanently, or to destroy, amputate or permanently disable a member or organ. Ala. Code § 13A-6-20(a)(1), (2).

The defendant concludes with the suggestion that failing to try this case in Selma would impinge on the right of citizens of the Northern Division to sit on federal juries. (Doc. 30 at 6). While "[i]t is … the policy of the United States that all citizens shall have the opportunity to be considered for service on grand and petit juries in the district courts of the United States," 28 U.S.C. § 1861, the defendant cites no authority for her implicit premise that any federal venire not including citizens of the Northern Division impermissibly interferes with this opportunity. Nevertheless, as contemplated by the Plan for the Qualification and Random Selection of Grand and Petit Jurors of the United States District Court for the Southern District of Alabama, § 9.01, the Court directs that a petit jury in this case be drawn from the district at large. *See Williams*, 2008 WL 2225763 at *1 (denying a Rule 18 motion but ordering that the jury be drawn from the district at large).[6]

For the reasons set forth above, the defendant's motion to fix trial in the Northern Division is **denied**.


DONE and ORDERED this 14th day of August, 2013.


s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE

---

[6] Because of the time required to obtain a panel from the entire district, this relief is conditioned on the defendant's prompt filing of an effective speedy trial waiver. In the meantime, this action remains set for trial during the September 2013 term.